UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                              No. 17-201

ROBERT BRUMFIELD, III                                            SECTION I

## ORDER & REASONS

On November 13, 2019, defendant Robert Brumfield III was found guilty[1] of one count of a second superseding indictment charging him and five co-defendants with a number of crimes. Specifically, Brumfield was found guilty as to count one,[2] conspiracy to obstruct commerce by robbery by taking U.S. currency from the presence and custody of Loomis security guards by means of actual and threatened force, violence, and fear of injury. Subsequently, Brumfield filed 10 objections to his presentence investigation report ("PSR").[3] The government opposes the objections.[4] For the following reasons, the Court overrules certain objections, and it accepts other objections.

*(A)     Objection No. 1: Factual Information in the PSR*

Brumfield objects that "information related to the offense conduct should not be based on information provided by the [Assistant U.S. Attorney] and [Law Enforcement Officers]," but instead "should be based on testimony of witnesses at

---

[1] R. Doc. No. 729 (jury verdict form).
[2] *Id.* at 1.
[3] R. Doc. No. 1464.
[4] R. Doc. No. 1519.

1

trial and the finding of the jury related to verdicts of 'guilty' on count 1, and 'not guilty' on counts 2 and 3 of the indictment."[5]

"When making factual findings at the sentencing stage, a district court may consider any information that bears sufficient indicia of reliability to support its probable accuracy." *United States v. Landreneau*, 967 F.3d 443, 451 (5th Cir. 2020) (quoting *United States v. Hawkins*, 866 F.3d 344, 347 (5th Cir. 2017)). "Findings of fact for sentencing purposes need only be established by a preponderance of the evidence." *Id.* (citing *United States v. Hebert*, 813 F.3d 551, 560 (5th Cir. 2015)).[6]

With respect to Objection Number 1, Brumfield does not challenge any particular fact contained in the PSR. Instead, he only challenges the underlying sources of information that the probation officer consulted. Brumfield also fails to cite to any particular item of disputed evidence in the PSR. Accordingly, the Court overrules Objection Number 1.

---

[5] R. Doc. No. 1464, at 1.

[6] "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (cleaned up). Yet "mere inclusion in a PSR" does not *ipso facto* validate facts that "lack[ ] an adequate evidentiary basis." *Id.* at n.2. That is, facts in a PSR still must bear "sufficient indicia of reliability" for the district court to consider them at sentencing. *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013). […] "Even uncorroborated hearsay evidence may be sufficiently reliable," under some circumstances. *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996) (uncorroborated portions of testimony were sufficiently reliable when other portions were corroborated and witness was subject to cross-examination); *see also Kearby*, 943 F.3d at 974 (citation omitted) ("If uncorroborated hearsay is sufficiently reliable, a district court may rely on it in making sentencing findings."). Even so, "bald, conclusionary statements in a PSR are not sufficiently reliable." *Zuniga*, 720 F.3d at 591 (cleaned up).

*United States v. Lucio*, 985 F.3d 482, 485–486 (5th Cir. 2021).

### *(B)    Objections Nos. 2 & 3:   Factual Information in the PSR*

Brumfield objects to certain factual statements in the PSR. Regarding Objection Number 2, Brumfield asserts that he "did not drive the dark green Honda away from the scene," and that the characterization of Brumfield as the get-away driver is inaccurate.[7] Brumfield contends that witness testimony at trial undermined the notion that he was a getaway driver; Brumfield fails to specify which witness's testimony supports his contention.[8]

At trial, Lydell Hinton testified that Brumfield told him that the FBI knew that Brumfield had been involved in the robbery, and that the FBI also knew that he was waiting in a green Honda Accord to pick up the individuals who committed the robbery.[9] Jamell Hurst testified that Brumfield stated that he was "not going to be struggling no more after they hit this lick," *i.e.*, after they committed a robbery.[10] According to Hurst, Brumfield also specified that before the robbery "they" had been staking out the armored truck for months and that the robbery would be easy because Trochez was "big, fat, and clumsy."[11]   Hurst further described comments that Brumfield made in November 2013 concerning surveillance that Brumfield and a "crew of people" were performing.[12] Co-defendant Jeremy Esteves stated that "there

---

[7] R. Doc. No. 1464, at 2.
[8] *Id.*
[9] R. Doc. No. 1584, at 177–78.
[10] R. Doc. No. 1584, at 234.
[11] *Id.* at 234–235.
[12] R. Doc. No. 1585, at 83–84 (Hurst recounting Brumfield's conversations describing surveillance in advance of the robbery), 87 (Hurst agreeing that "there had been some planning of this robbery for a number of months[.]").

had been some planning of this robbery for a number of months."[13] Additionally, the government offered cell phone records and expert testimony, which established that a telephone number associated with Brumfield was in the vicinity of the Adams Street location prior to, and immediately after, the robbery.[14]

In addition to the PSR, the Court considers the factual basis statements[15] signed by co-defendants Georege and Ofomata.[16] In these statements, George and Ofomata agreed that Brumfield served as the second getaway driver, and that he waited at the Adams Street location in a Honda Accord—which belonged to Ofomata's girlfriend—to collect Esteves, Johnson, George, and Ofomata after those defendants

---

[13] R. Doc. No. 1585, at 87.
[14] R. Doc. No. 1586, at 59, 63.
[15] R. Doc. Nos. 1389 (George's factual basis) & 1391 (Ofomata's factual basis).
[16] *Id.* "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). "Statements by coconspirators are sufficiently reliable to form the basis of a [factual] finding." *United States v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017). A court may even consider out-of-court declarations by an unidentified informant where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means. *United States v. Rogers*, 1 F.3d 341 (5th Cir. 1993); *see also United States v. Young*, 981 F.2d 180 (5th Cir. 1992); *United States v. Godinez*, 640 F. App'x 385, 387–389 (5th Cir. 2016).

George and Ofomata were placed under oath at their joint rearraignment hearing. *See* R. Doc. No. 1524, at 4–5. George and Ofomata both initialed each page of their factual basis statements and signed the last page; and after hearing the government read the documents aloud, both agreed that the statements were correct. *Id.* at 48, 65–66. Because George and Ofomata stated on the record, under oath, that the factual basis statements were correct, and those documents corroborate evidence presented at trial, the Court finds that those statements have sufficient indicia of reliability to support their accuracy.

fled the scene of the robbery in the Chevy Tahoe.[17] Additionally, at George's rearraignment hearing, George stated, in response to a question by the Court, that it was correct that "Brumfield was assigned the role of getaway driver."[18]

Regarding Objection Number 3, Brumfield argues that he did not tell "L.H." that he participated in the robbery.[19] The Court construes "L.H." as a reference to Lydell Hinton, a cooperating witness who testified at trial. Specifically, Hinton testified that Brumfield came to Hinton's recording studio, looking to record a rap song, instigated by the fact that the FBI had questioned Brumfield about the Loomis robbery.[20] Hinton advised him not to do so.[21] Hinton testified that Brumfield told him that he participated in the robbery.[22] Specifically, Hinton testified that Brumfield stated that "[Brumfield] was in the car."[23]

The information in the PSR is corroborated by witness testimony, cell phone records, and statements by Brumfield's coconspirators. The Court finds by a preponderance of the evidence that the information contained in the PSR bears sufficient indicia of reliability to support its accuracy. Accordingly, the Court overrules Objections Numbers 2 and 3.

---

[17] R. Doc. No. 1389, at 5–6; R. Doc. No. 1391, at 5–6.
[18] R. Doc. No. 1524, at 68.
[19] R. Doc. No. 1464, at 2.
[20] R. Doc. No. 722, at 18–19 (Hinton recounting Brumfield's comments that "the feds" questioned Brumfield, and "they know [Brumfield] was involved with it," including that he was "waiting to pick the guys whoever did it up"), 44.
[21] *Id.*
[22] *Id.* at 44–45 ("[Hinton] said, 'Look, was you involved with it for real?' [Brumfield] was like, 'Yeah.' He's like, 'I really got something to do with it.'").
[23] *Id.* at 46.

### *(C) Objection No. 4: Downward Adjustment of Offense Level*

Brumfield contends that he is entitled to a 2-level offense level reduction as a "minor participant," pursuant to U.S.S.G. § 3B1.2(b). Brumfield argues that his level of participation in the commission of the robbery was less serious than his co-defendants because he was not present at the scene of the robbery, and he never possessed a weapon. Brumfield submits that "[d]epending on the court's view of the evidence adduced at trial, [Brumfield] at worst was a getaway driver, and more likely was simply involved in early planning and ultimately cut from the crew, replaced by George, and was never involved in the robbery."[24]

The probation officer rejected Brumfield's objection, applying United States Sentencing Guideline § 3B1.2. In relevant part, the Guidelines provide for a downward adjustment of two levels for a minor participant. *See* U.S.S.G. § 3B1.2(b).

"A 'minimal participant' is someone who lacks knowledge or understanding about the scope or structure of the enterprise; a 'minor participant' is someone who is less culpable than most participants but more culpable than a minimal participant." *United States v. Broussard*, 882 F.3d 104, 111 (5th Cir. 2018). "Whether [a defendant] was a minor or minimal participant is a factual determination[.]" *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)). "This fact-based determination is based on the totality of the circumstances surrounding the commission of the crime." *United States v.*

---

[24] R. Doc. No. 1464, at 5.

*McCain-Sims*, 695 F. App'x 762, 765 (5th Cir. 2017).[25] The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a mitigating role adjustment. *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).

At trial, Jamell Hurst testified that Brumfield told him about the plan to rob the Loomis truck prior to the robbery.[26] According to Hurst, Brumfield told him about the surveillance that he and the robbers conducted at the Chase Bank prior to the robbery, and that Brumfield described Hector Trochez as "fat" and "clumsy."[27] Hurst testified that Esteves told him that although Brumfield was originally supposed to participate in the robbery, the other participants concluded that Brumfield would "freeze up," and they therefore replaced him with George.[28]

---

[25] The factors listed in U.S.S.G. § 3B1.2, Application Note 3(C)(i)-(iv) provide:
  (i.) [T]he degree to which the defendant understood the scope and structure of the criminal activity;
  (ii.) the degree to which the defendant participated in planning or organizing the criminal activity;
  (iii.) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
  (iv.) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]
  (v.) the degree to which the defendant stood to benefit from the criminal activity.

[26] R. Doc. No. 1584, at 234 (Hurst testimony) (stating that Brumfield remarked that he would not be struggling after "they hit this lick" where lick means robbery; and that the co-defendants were staking out the armored truck); R. Doc. No. 1585, at 80–81.

[27] R. Doc. No. 1584, at 234–235.

[28] *Id*. at 86–87.

Special Agent Zachary Elmer of the FBI testified that Thierry King, an employee of Chase Bank and a person of interest in the case, allowed the FBI to search her cell phone address book, and the FBI found both Esteves' and Brumfield's numbers in her phone.[29]

Special Agent William C. Williams, an expert witness with the FBI's Cellular Analysis Survey Team, established that a telephone number associated with Brumfield was in the vicinity of the Adams Street location prior to, and immediately after, the robbery.[30]

The Court considers the totality of the circumstances surrounding the robbery, and the factors listed in U.S.S.G. § 3B1.2, Application Note 3(C)(i)-(iv). In particular, as to factor (i), the facts demonstrate that Brumfield had a full understanding of the scope and structure of the criminal activity. The testimony clearly demonstrates that with respect to this carefully planned attack, a robbery of an armored car with armed guards was to take place. Common sense would dictate that Brumfield understood the reason why he was being replaced and that armored car guards would not relinquish proceeds of the robbery to his co-defendants in response to a "please" and a "thank you." As to factor (ii), Brumfield had a significant degree of participation in the planning and the organization of the criminal activity. As to factor (iv), the nature of Brumfield's participation as the second get-away driver facilitated the other co-defendants to commit the robbery by helping them avoid apprehension. And as to

---

[29] R. Doc. No. 1585, at 177–78.
[30] R. Doc. No. 1586, at 59, 63; *see also id.* at 37–38 (Special Agent Steven Rayes discussing Brumfield's telephone number).

factor (v), Brumfield stood to receive a financial benefit from the robbery of an armored truck.

The Court finds that Brumfield was not substantially less culpable than the other co-defendants. *United States v. McCain-Sims*, 695 F. App'x 762, 765-76 (5th Cir. 2017) (downward adjustment pursuant to § 3B1.2 was not warranted for a defendant who had served as the getaway driver for a bank robbery, but had not planned the robbery, had not assisted in obtaining the firearms used during the robbery, and had limited knowledge of the robbery plan). Brumfield has not demonstrated by a preponderance of the evidence that a mitigating role adjustment is warranted, and the probation officer did not err in denying such an adjustment. The Court overrules Objection Number 4.

### (D)  Objections Nos. 5 & 10:  Base Offense Level

The Court addresses Objections Numbers 5 and 10 together as they both concern the same issue. Brumfield argues that his base offense level should be calculated as 22 pursuant to U.S.S.G. § 2B3.1(a), rather than 43 based on the cross reference contained at U.S.S.G. § 2B3.1(c)(1).[31] Specifically, Brumfield contends that he was replaced by George on the robbery team, and that—because the jury found Brumfield not guilty on count three of the indictment—the discharge of firearms and the death of Hector Trochez were outside the scope of Brumfield's participation in the robbery.[32]

---

[31] R. Doc. No. 1464, at 5, 8.
[32] R. Doc. No. 1464, at 5. *But see United States v. Hull*, 160 F.3d 265, 269 (5th Cir. 1998) (noting that "findings of fact for sentencing purposes need meet only the lower

9

The Sentencing Guidelines provide: "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." U.S.S.G. § 2B3.1(c)(1).[33]  Under the Guidelines, the base offense level for first degree murder is 43.  U.S.S.G. § 2A1.1.

"Co-conspirator liability under § 1B1.3 does not automatically arise because of participation in a conspiracy." *United States v. Morrow*, 177 F.3d 272, 302 (5th Cir. 1999).  "[I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," relevant conduct includes all acts and omissions of others that were "(i) within the scope of the jointly undertaken criminal activity," "(ii) in furtherance of that criminal activity," and "(iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  *See*

---

standard of 'preponderance of evidence.' Therefore, a finding that Hull was not guilty of conspiracy for purposes of conviction is not inconsistent with a finding that he was a conspirator for purposes of sentencing.") (internal citations omitted).

[33] "Murder is the unlawful killing of a human being with malice aforethought."  18 U.S.C. § 1111(a). "Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any […] robbery […] is murder in the first degree." *Id*. "To kill 'with malice aforethought' means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life." *See* Fifth Circuit Criminal Pattern Jury Instructions § 2.52A (2019). "To find malice aforethought, [one] need not be convinced that the defendant acted out of spite, hatred, malevolence, or ill will toward the victim." *Id*. "In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument and the manner in which death was caused." *Id*. *See also United States v. Agofsky*, 516 F.3d 280, 282 n.2 (5th Cir. 2008) (citing the pattern instruction with approval).

*also id.* § 1B1.3 cmt. 3(A). "A court must make particularized findings that the elements of foreseeability and scope of agreement have been met." *Morrow*, 177 F.3d at 302; *see also United States v. Bravo*, 852 F. App'x 790, 795 (5th Cir. 2021) (stating that a district court must find these facts by a preponderance of the evidence) (citing *Landreneau*, 967 F.3d at 451 (5th Cir. 2020)).

The Sentencing Guidelines provide the following illustration:

> Defendant C is the getaway driver in an armed bank robbery in which $15,000 is taken and a teller is assaulted and injured. Defendant C is accountable for the money taken under subsection (a)(1)(A) because he aided and abetted the act of taking the money (the taking of money was the specific objective of the offense he joined). Defendant C is accountable for the injury to the teller under subsection (a)(1)(B) because the assault on the teller was within the scope and in furtherance of the jointly undertaken criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

U.S.S.G. §1B1.3, Application Note 4(B)(i).

Brumfield argues that "the discharge of firearms and the ultimate murder of Hector Trochez was not within the 'scope' of the conspiracy as it relates to Brumfield's participation."[34] Specifically, Brumfield contends that "even though [he] may have been found guilty of being a member of a conspiracy to commit robbery, it does not flow from that fact that his relevant conduct is the same as all the other co-conspirators," or that he is responsible for the death of Trochez.[35] In support of his position, Brumfield emphasizes language from a primer published by the U.S. Sentencing Commission that "[a]cts of others that were **not within the scope** of the

---

[34] R. Doc. No. 1464, at 6.
[35] *Id.*

11

defendant's agreement, even if those acts were known or reasonably foreseeable, **are not relevant conduct** under subsection (a)(1)(B)."[36]

As the Court explained in its resolution of Objection Numbers 2, 3, and 4, the Court reviewed the testimony of Hinton, Hurst, Elmer, Williams, and the factual basis documents signed by George and Ofomata, as well as the PSR. These items of evidence demonstrate that Brumfield had advance knowledge that his co-defendants planned to rob the Loomis armored truck and that Brumfield participated in the preparation for that robbery. Further, Hurst's testimony related that Brumfield was originally designated to participate at the scene of the robbery, but that the co-defendants were concerned that Brumfield would "freeze up."[37] One can fairly infer from Hurst's testimony that the co-defendants were aware that Brumfield might not have sufficient resolve to react as needed during a violent attack on the armored truck.

Based on all the evidence, the Court finds that the scope of Brumfield's jointly undertaken criminal activity with his co-defendants encompassed the robbery of the Loomis armored truck, which implicitly embraces his co-defendants discharge of firearms at the scene of the robbery. *See* U.S.S.G. § 1B1.3, Application Note 3(B) ("[T]he court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others."); Application Note 4(B)(i) (illustration of "Defendant C" as the getaway driver). Even if Brumfield's role

---

[36] *Id.* at 7 (emphasis in original).
[37] R. Doc. No. 1585, at 86–88.

12

changed from participation at the scene of the robbery to participation as a getaway driver, Brumfield nevertheless helped plan the robbery and his agreement as to the scope of the crime did not change. Stated differently, the Court finds by a preponderance of the evidence that "the scope of the specific conduct and objectives embraced by [Brumfield's] agreement," included the violent attack on an armored truck. *See id.* § 1B1.3, Application Note 3(B). *See also United States v. Burton*, 1126 F.3d 666, 697 (5th Cir. 1997) ("We find that the district court reasonably inferred from the evidence the scope of the criminal activity to which [the defendant] agreed."); *United States v. Jordan*, 945 F.3d 245, 264 (5th Cir. 2019) (citing *Burton* with approval and noting that bank robbery "is, by its nature, a violent crime.").[38]

Brumfield does not dispute the factual information in the PSR that as Trochez was in the process of transporting a handcart of currency into the Chase Bank branch, George, Ofomata, and Johnson exited their vehicle with weapons; and George, Ofomata, and Johnson began shooting.[39] During the shooting, Trochez, who had discharged his weapon in self-defense, was shot and killed.[40] One of the perpetrators then approached the handcart and retrieved the bag of currency.[41] Accordingly, the Court finds that the shooting of Trochez was "in furtherance of [the] criminal activity" that Brumfield jointly agreed to undertake. U.S.S.G. § 1B1.3(a)(1)(B)(ii); *see also id.*, Application Note 3(C).

---

[38] *See also United States v. Patton*, 927 F.3d 1087, 1094–1096 (10th Cir. 2019).
[39] R. Doc. No. 1660, at 7. *See also* R. Doc. No. 1389, at 4–5; R. Doc. No. 1391, at 4–5.
[40] *Id.*
[41] *Id.*

Lastly, the Court also finds that the shooting was "reasonably foreseeable in connection with [the] criminal activity." U.S.S.G. § 1B1.3(a)(1)(B)(iii).[42] Again, the evidence that the Court has already discussed demonstrates that Brumfield was an active participant in the planning of the robbery, and he was reassigned to the role of getaway driver based on his co-defendants apprehension that Brumfield would "freeze up," at the scene of the robbery. It was reasonably foreseeable to Brumfield that a robbery of an armored truck with armed guards could very well include a discharge of firearms. Indeed, Brumfield seems to concede this point, stating "[o]f course, it could be argued that in any bank robbery, it is 'reasonably foreseeable' that guns might be used, and someone might get shot[.]"[43] *Cf. Jordan*, 945 F.3d at 264.

Based on these findings, which the Court makes by a preponderance of the evidence, the Court overrules Objections Numbers 5 and 10. The probation officer did not err in including the shooting death of Trochez as relevant conduct with respect to Brumfield and in applying the cross-reference at U.S.S.G. § 2B3.1(c)(1).

---

[42] The Sentencing Guidelines caution that "the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical." *Id.*, Application Note 3(D). However, the Guidelines provide this example: "[T]wo defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (*even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone*) because the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery), was in furtherance of that criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." *Id.* (emphasis added).
[43] R. Doc. No. 1464, at 7.

### *(E)   Objections Nos. 6 & 7:  Factual Information in the PSR*

In Objections Number 6 and 7, Brumfield disputes factual information contained in the PSR.  Specifically, in Objection Number 6, Brumfield maintains that he "was convicted of Disturbing the Peace, not Illegal Use of a Weapon."  In Objection Number 7, he asserts that he "was arrested for Simple Battery […] but convicted of Disturbing the Peace."  Both of these charges appear in the "Other Arrests" portion of Brumfield's PSR, and the probation officer did not rely on these items when determining Brumfield's criminal history score.[44]  Likewise, Brumfield does not argue that his criminal history score is inaccurate.

The Court will consider the convictions as set forth in Brumfield's objections when considering the factors set forth in 18 U.S.C. § 3553(a).

### *(F)   Objection No. 8:  Factual Information in the PSR*

Brumfield states that he sustained an injury in Tangipahoa Parish Prison, rather than in St. Tammany Parish Jail, as stated in the draft PSR.  The government provided no contradictory information, and the probation officer amended the final PSR to reflect Tanigpahoa Parish Prison.  Accordingly, the Court accepts Brumfield's statement as to the facility in which he was injured.

### *(G)   Objection No. 9:  Cognitive Behavioral Programming*

The probation officer included cognitive behavioral programming as a special condition of Brumfield's supervision.[45]  Brumfield objects to "the conclusion that his

---

[44] R. Doc. No. 1660, at 14–15.
[45] R. Doc. No. 1660, at 22 ¶ 131.

criminal history, criminal associations, and participation in the instant offense is indicative of a need for cognitive behavioral programming."[46] The probation officer rejected Brumfield's objection, reasoning that Brumfield's background and criminal conduct in the instant case demonstrate a need for cognitive behavioral programming.[47]

"District courts have broad discretion to impose special conditions of supervised release, so long as they are 'reasonably related' to the factors set forth in [18 U.S.C.] § 3553(a)(1), (a)(2)(b), (a)(2)(c), and (a)(2)(d)[.]" *United States v. Beraud*, 741 F. App'x 976, 980 (5th Cir. 2018) (citing *United States v. Fernandez*, 776 F.3d 344, 346 (5th Cir. 2015)). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §§ 3553(a)(1), (a)(2)(D).

The final PSR notes that Brumfield has no reported history of mental health or emotional problems.[48] Further, Brumfield is not taking any prescription medication for mental health or emotional concerns. However, the probation officer noted in response to Brumfield's objection that he has "a prior criminal conviction for fraud-related charges," and he "was serving a term of probation supervision at the

---

[46] R. Doc. No. 1464, at 8.
[47] R. Doc. No. 1660, at 27.
[48] R. Doc. No. 1660, at 16.

time of the instant offense."[49] The probation officer also noted that Brumfield's "criminal history, criminal associations, and participation in the instant offense is indicative of a need for cognitive behavioral programming."[50]

Given Brumfield's repeated criminal conduct, his failure to avoid criminal conduct while serving a prior term of probation, and the entirety of his conduct in this case, the Court finds that Brumfield would benefit from cognitive behavioral programming, and that such treatment would help Brumfield's social decision making. *Beraud*, 741 F. App'x at 981 (affirming the district court's imposition of cognitive behavioral programming to improve the defendant's "social decision making"). Accordingly, the Court overrules Objection Number 9.

\* \* \*

For all the foregoing reasons,

**IT IS ORDERED** that with respect to Objections Numbers 1, 2, 3, 4, 5, 9, and 10, Brumfield's objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that with respect to Objections Numbers 6, 7, and 8, Brumfield's objections are **SUSTAINED**.

New Orleans, Louisiana, April 20, 2022.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[49] *Id.* at 27.
[50] *Id.* at 16 ¶ 76.